Deborah BURKE, Administratrix of
the Estate of Guy C. Arnold,
Jr., Plaintiff–Appellant,

v.

Carole ARNOLD, et al., Defendants–
Appellees.

Court of Appeals of Tennessee,
Eastern Section.

Dec. 13, 1991.

Permission to Appeal Denied by Supreme
Court May 4, 1992.

Phillip L. Boyd, Rogersville, for plaintiff-appellant.

Heiskell H. Winstead, Rogersville, for defendants-appellees.

OPINION

SANDERS, Presiding Judge (Eastern Section).

The Administratrix appeals from the court's award of a claim filed against the estate, to which she filed exceptions on the grounds it was not legally enforceable and was fraudulent.

The decedent, Guy C. Arnold, Jr., and the Defendant–Appellee, Carole Arnold, were married sometime in 1975 or 1976 and they were divorced in Hawkins County on April 17, 1989. On the same day they signed a comprehensive marital dissolution agreement which settled all of their marital assets and liabilities between them. Mr. Arnold died intestate in Hawkins County in December that same year and the Plaintiff–Appellant, Deborah Burke, qualified as administratrix of his estate.

The Defendant–Appellant, Carole Arnold, filed a claim against the estate which, as pertinent here, was for $21,631.54. The basis for this claim was a loan of $9,832.54 which Carole allegedly made to Guy in 1976. In support of this claim Carole presented a document which reads as follows: "4–19–89 I owe Carole Arnold $9,832.54 plus 8% interest on money for *15 years.* This was loan. [Signed] Guy C. Arnold." An enlarged photo copy of this document is attached as Appendix "A" to this opinion.

The Administratrix filed the following exceptions to the claim:

"1. The estate is not indebted to claimant.

"2. The claim does not state a legally enforceable claim against the estate and therefore, should be dismissed.

"3. The claim is fraudulent and was conceived by the claimant with ill will and malice toward the estate and/or the present Administratrix of the estate in that the Estate has been forced to sue claimant for recovery of much personal property taken away and disposed of by claimant.

"4. There is no enforceable basis, legal documents, or memorandums supporting the claim of loans, and same are barred by the statute of frauds."

It is observed the document relied upon by Ms. Arnold to support her claim is dated just two days after their divorce and the execution of a property settlement. The existence of such a debt is not mentioned in the property settlement. The only evidence in the record as to how the document came into existence is through the testimony of Ms. Arnold. The Appellant does not deny that the signature which appears on the document is that of Mr. Arnold, but she insists that Ms. Arnold found his signature on a larger piece of paper, cut it out, then added the terms of the alleged loan without his knowledge. The material issue of fact on trial was how and when did Guy Arnold place his signature on the document at issue.

The only witnesses who testified at the hearing were Carole Arnold and two witnesses called as experts.

The Appellant's expert, Larry Miller, opined that it was "highly probable" that the terms of the loan were placed on the document after the signature. He based his opinion on several factors: (1) The word "loan" was compressed and deviated from the baseline; (2) Normal phraseology would be "This is a loan" and the word "a" was not in the document; (3) No other words deviated from the baseline; (4) Three types of ink were used; (5) The edges of the paper were not regular or rectangular, indicative of hand scissors on all four sides; and (6) The document is written on paper commonly used in Xerox machines.

Mrs. Arnold's expert, Mr. Michael McCoy, did not opine as to whether the terms of the loan were written before or after Mr. Arnold's signature was placed on the document. He stated he could not tell when the signature was written.

The chancellor found the issues in favor of Mrs. Arnold and allowed the claim in the amount of $21,631.54. The Administratrix has appealed, saying the court was in error.

We think the controlling issue on appeal is the insistence that it was error for the court to permit Mrs. Arnold to testify in violation of T.C.A. § 24–1–203, known as the Dead Man Statute.

■ Since this case must be remanded for a new trial, we think it appropriate to point out that the document relied upon by Mrs. Arnold has erroneously been referred to throughout this record as "a promissory note." It is not a "promissory note." It is nothing but the acknowledgment of a pre-existing debt. It contains no promise to pay. We point this out in case issues are raised on remand that were not raised in the case at bar.

Mrs. Arnold testified that Mr. Arnold came to her home in Kingsport and there executed the document. She testified he executed it because "[h]e decided he should give me something to show that he had

used my money, how long he had had it. He said I should have that money back in the event—" After an objection, she was told she could not relate her conversation with deceased. Mrs. Arnold then went on to state at least three times that Mr. Arnold signed the document in her presence.

The attorney for the estate objected at the beginning of the trial as to any discussion with or transactions by the deceased based upon the Dead Man Statute. After the first objections, the trial court stated, "Your objection is noted. You will not have to make it anymore. I will treat it as a continuing objection. Let me hear the evidence and see if I will rule on it post-operatively." The record does not indicate a subsequent ruling was made on those objections. The estate's attorney then objected on the same grounds periodically through Mrs. Arnold's testimony. The estate contends Mrs. Arnold's testimony that Mr. Arnold signed the document in her presence is inadmissible pursuant to the Dead Man Statute, T.C.A. § 24–1–203. It contends that without that testimony there is ample uncontradicted evidence the claim should be rejected as fraudulent.

■ We find the testimony in question was inadmissible and was properly objected to at trial. T.C.A. § 24–1–203, as pertinent here, provides:

In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party.

The purpose of the statute is to "prevent the surviving party from having the benefit of his own testimony, when, by the death of his adversary, his representative was deprived of the decedent's version of the transaction or the statement." *Baker v. Baker*, 24 Tenn.App. 220, 142 S.W.2d 737, 744 (1940).

While the general approach is to construe the exclusion narrowly, *Baker*, at 744, "transactions by" encompasses a large range of excludable testimony on things done in the decedent's presence. "Transactions with the intestate refer to things done in his presence, to which he might testify of his personal knowledge, were he alive...." *Waggoner v. Dorris*, 17 Tenn. App. 420, 426, 68 S.W.2d 142 (1933) (quoting *Morris v. Norton* (C.C.A.), 75 F. 912, 922).

Mrs. Arnold's testimony that "he signed the document in my presence" goes directly to the contested transaction with the decedent. It is testimony as to a transaction where the decedent was present and goes directly to the material question at issue. Mrs. Arnold's statements that "[h]e decided he should give me something to show that he had used my money, how long he had had it. He said I should have that money back in the event—" are likewise barred by the Statute. This was testimony relating to her conversations with the decedent. Both of these statements involve an event which the deceased could have disputed. Since one is silenced by death, the other is silenced by operation of law.

■ It is true counsel for the estate did not object to every statement Mrs. Arnold made concerning statements made by or transactions with Mr. Arnold, but that was not necessary. One objection to a line of testimony is sufficient. In *Gulf Refining Co., et al. v. Frazier*, 19 Tenn.App. 76, 98, 83 S.W.2d 285 (1934) the court, in addressing this matter, said:

Timely objections were interposed on behalf of defendants to the line of testimony indicated in the assignments, and these objections were repeated at intervals throughout the taking of testimony. It is true that they were not repeated in every instance where such testimony was elicited from a witness, but this was unnecessary. "One ruling on one question is enough, and a repetition of similar exceptions is not to be required, if, indeed, to be tolerated."

*Id.* at 98, 83 S.W.2d 285.

The estate's attorney objected to Mrs. Arnold's testimony relating to her conversations with and transactions by the decedent at the beginning of and periodically

through the trial. The court held it to be a continuing objection. It all falls within the same line of testimony and repeated objections were not necessary.

■ This brings us to the issue of whether or not the error of not excluding the inadmissible testimony of Mrs. Arnold more probably than not affected the judgment. *See* Rule 36, T.R.A.P. We are persuaded it did. In his memorandum opinion, the chancellor said: "There is much about this note that caught the attention of the Court even before the expert witnesses testified. It takes no expertise to notice that the word 'loan' appears to be compressed in an effort to keep it from running across the signature of the decedent. It is also obvious that the last two letters of this word deviate upwards from the baseline or level of the preceding two letters in the word. *However, claimant's explanation was plausible* and the expert called on her behalf pointed out that the writer deviated from the baseline in other areas where there was no need to do so." (Emphasis ours.) From the court's finding, it is apparent it was the testimony of Mrs. Arnold which persuaded the court to find in her favor. We have no way of knowing which part of her testimony the court did consider.

Accordingly, the decree of the chancellor is reversed and the case is remanded for a new trial. The cost of this appeal is taxed to the Appellees.

FRANKS and McMURRAY, JJ., concur.

APPENDIX A

I owe CAROL ARNOLD $9,833.59 - 19-29 PLUS 8% INTEREST on Money For 15 years. THIS WAS LOAN.