IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 9, 2001 Session

## IN RE: ESTATE OF JAMES H. WILLIAMS

**Appeal from the Chancery Court for Williamson County**
**No. I-26223; No. I-26694; No. I-26782     Jeffrey F. Bivins, Chancellor[1]**
**No. P992314     R. E. Lee Davies, Chancellor**

---

**No. M2000-02434-COA-R3-CV - Filed April 28, 2003**

---

This case began as four separate cases which were consolidated. All four cases arose from the divorce of James Hollister Williams and Kathyrn L. H. Williams, his untimely death, and the probate and distribution of assets in his sizeable estate. The trial court upheld the validity of the divorce by denying Ms. Williams relief under Tenn. R. Civ. P. 60.02, awarded several annuities to Ms. Williams based on her status as the named beneficiary, ordered her to pay the estate taxes resulting from those annuities, and approved part of a claim filed by Ms. Williams against the Estate, but denied part. We affirm the decisions of the trial court upholding the validity of the divorce and awarding the annuities to Ms. Williams, but vacate the order granting the Estate a judgment against Ms. Williams for the estate taxes on the annuities. We also affirm in part and reverse in part the decision of the trial court with respect to the claim against the Estate, and hold that the entire claim should have been denied.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Dana McLendon, Ernest Wilson Williams, Franklin, Tennessee, for the appellant, Jennie Williams Perdue, Executrix.

Eva C. Madison, Peter T. Dirksen, Stephen A. Cobb, Nashville, Tennessee, for the appellee, Kathryn L. H. Williams.

---

[1]The four separate cases were consolidated by the trial court into No. I-26223. Nonetheless, this court was asked to consolidate the cases on appeal and did so before the trial court's order of consolidation was brought to our attention.

David A. Thornton, Memphis, Tennessee, for the appellee, Hartford Life and Annuity Ins. Co.

Christopher E. Thorsen, George H. Nolan, Nashville, Tennessee, for the appellee, Lincoln National Life Insurance.

Gregory M. Leitner, Nashville, Tennessee, for the intervenor, Guardian Life Insurance.

**OPINION**

James Hollister Williams and Kathryn Louise Henderson Williams were divorced by order entered May 11, 1999 in the Divorce Case. Fifty-four days later, Mr. Williams drowned, leaving a will and a large estate. Shortly thereafter, his daughter, Ms. Jennie Williams Perdue, was appointed executor of his estate, and the Probate Case was begun on July 13, 1999. Among the assets were certain annuities which named Kathryn Williams as the beneficiary, and the Estate filed a complaint in the Probate Case seeking a declaratory judgment that those annuities belonged to the Estate because of the language of the parties' marital dissolution agreement. In correspondence preceding the filing of the Estate's complaint, Ms. Williams had taken the position that she was Mr. Williams's widow, not his former wife, and/or that no change of beneficiary had been made as to certain assets. The Estate also sought to have the final decree of divorce declared valid and a declaration that the property awarded to Mr. Williams in the decree was the property of the Estate.

Kathryn Williams then filed a motion to intervene in the Probate Case and challenged the probate court's jurisdiction over the divorce decree and other issues raised by Ms. Perdue. In addition, in October of 1999, Ms. Williams filed a claim against the Estate for a total of $95,000.

Meanwhile, Kathryn Williams filed in September of 1999 a motion for relief from judgment pursuant to Tenn. R. Civ. P. 60.02 in the Divorce Case seeking to have the divorce set aside on a number of grounds.

While matters were pending and proceeding in the Divorce Case and the Probate Case, Lincoln National Life Insurance Company, Guardian Life Insurance Company, and Hartford Life and Annuity Insurance Company, all issuers of annuity contracts to James H. Williams, the deceased, on which Kathryn Williams was the designated beneficiary, brought or intervened in two interpleader actions seeking to have determined the proper payee of the annuities, the Interpleader Cases.

Ms. Perdue filed in the Probate Case an application for injunctive relief relating to apportionment of tax liability for the annuities and life insurance policies on which Kathryn Williams was the named beneficiary.

The issues raised in these cases were decided in various final orders. The result was: (1) Ms. Williams's motion to set aside the divorce decree was denied, and the divorce was held valid; (2) Ms. Williams was granted the annuities as the named beneficiary thereof; (3) tax liability for the annuities was charged to Ms. Williams, and a judgment against her in favor of the Estate for the

amount of taxes was entered; and (4) Ms. Williams was awarded judgment on a portion of her claim against the Estate, in the amount of $40,000. All these holdings are appealed.

Mr. Williams's will created a marital trust at the maximum allowable marital deduction for the benefit of "my wife," gave his tangible personal property after specific bequests to "my wife," and left the rest, residue, and remainder of his estate to his daughter. Mr. Williams also designated "my wife" as co-executor and co-trustee.

Although Mr. Williams did not change his will after the divorce, Tenn. Code Ann. § 32-1-202(a) operates to make such changes by revoking the bequests to and nomination of "my wife." That statute provides:

> If after executing a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse, any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as executor, trustee, conservator or guardian, unless the will expressly provides otherwise.

Tenn. Code Ann. § 32-1-202(a).

Thus, if the divorce was valid, the bequests to Kathryn Williams were revoked, and Ms. Perdue inherited that property as part of the remainder estate. Therefore, we begin with the challenge to the divorce.

## I. The Divorce Decree

Mr. and Ms. Williams lived together for a period of seven or eight years and then married in February of 1990. Ms. Williams worked at Mr. Williams's business from early in their relationship. On May 11, 1999, Mr. Williams filed for a divorce based on irreconcilable differences and inappropriate marital conduct by Ms. Williams. On that date, the parties met at the courthouse with Mr. Williams's lawyer and executed a Marital Dissolution Agreement ("MDA"). The MDA includes a paragraph in which Ms. Williams stipulated that she was guilty of inappropriate marital conduct and that her husband was entitled to a divorce. She also waived her right to file an answer to the complaint.

The divorce decree, granting a divorce on grounds of irreconcilable differences, was signed by the trial court the same day that it was filed, without a hearing. The final decree reflects that the parties agreed "to allow Mr. Williams to proceed to Court on an uncontested basis" and that the court approved and incorporated the MDA. After the divorce decree was entered, Mr. and Ms. Williams continued to live together and to work together. Until Ms. Williams's filing of the motion herein, the final decree was not appealed or otherwise challenged, and became a final order thirty days after its entry.

Four months after the entry of the decree, and two months after the initiation of the probate proceedings, on September 8, 1999, Ms. Williams filed in the Divorce Case a Rule 60 motion for relief from the divorce decree. The motion accompanied requests for injunctive relief against the Estate and the executrix and detailed efforts by the Estate, among other things, to sell the residence in which the Williamses had lived and in which Ms. Williams continued to live. It is apparent that the actions of the executrix prompted the filing of the motion to set aside the divorce.

In her pleadings in support of the motion, Ms. Williams acknowledged that she had an extra-marital affair in February and March of 1999 which her husband discovered. She alleges that Mr. Williams then began dating other women. In her affidavit supporting the motion, Ms. Williams testified that on May 10, 1999, Mr. Williams told her he wanted a divorce and that they had an appointment with his lawyer the next day. She further testified, "Prior to the discussion of divorce on May 10, 1999, Decedent had only once, in passing, mentioned the possibility of divorce to Affiant." Her affidavit includes the details of the parties' meeting at the courthouse and their signing of the documents.

In the Divorce Case, the parties entered an agreed order to set the Rule 60 motion for hearing, which order also included notice of the date and time of depositions of Ms. Williams and of Ms. Perdue. After a portion of Ms. Williams's deposition was taken, and based on questions she was asked, she filed a motion *in limine* asking the court to exclude from the hearing on the Rule 60 motion any "evidence of the details of her alleged inappropriate marital conduct and the details of her personal life after the purported divorce and after the death of Plaintiff James Williams." After a hearing, the trial court denied the motion *in limine*.

After that hearing, the Estate filed a response to the Rule 60 motion. That response disputed Ms. Williams's version of the facts, as set out in her motion, including an averment that the proof would show "that the parties discussed, debated and negotiated a divorce beginning not later than several weeks before the plaintiff was granted a divorce . . . ." In response to the court's expressed interest in a "thumbnail sketch" of the proof that might be presented if evidence were determined to be necessary, the response summarized the testimony of Lee Billen, a friend and co-worker of both Mr. and Ms. Williams. Attached to the response is Ms. Billen's affidavit. In that affidavit, Ms. Billen testified that during March, April and May of 1999, she and Kathryn Williams discussed a number of times that the Williamses were having marital difficulties. "During these discussions in March and April 1999, Kathy Williams told me that she and James Hollister Williams had discussed divorce. Subsequently, Kathy Williams told me that their attempted reconciliation had failed, that James Hollister Williams was committed to being divorced from Kathy Williams and finally that 'Jim is going to divorce me.'" Ms. Billen recommended several times that Ms. Williams consult a lawyer. In addition, the response asserts that Ms. Williams's version of the facts surrounding the divorce was inconsistent with her deposition testimony and makes reference to specific deposition testimony.

Ten days after the hearing on the motion *in limine*, a hearing was held on the Rule 60 motion which involved argument on the parties' positions, discussion of discovery and other scheduling

issues, and similar procedural matters. The transcripts of that hearing and the hearing on the motion *in limine* provide insight into the positions of the parties and the court that is helpful in accurately defining the issue which we must decide.

In her trial court filings, Ms. Williams argued that her admission of her extra-marital affair should preclude evidence concerning this relationship. She further stated, ". . . the Court is not here to determine whether a divorce could have been granted in this case because Mrs. Williams will readily stipulate that both parties had grounds for divorce." Essentially the same argument was made at the hearing where she argued that she was not before the court to get a divorce and, therefore, relative fault in the breakdown of the marriage was irrelevant. She acknowledged that grounds for divorce existed at the time of the divorce. She also asserted the issue was not a redistribution of the marital property and she was not trying to alter the MDA. She argued that the decree should be set aside, with the effect that she was Mr. Williams's widow, since his death precluded a continuation of the divorce case.

With regard to the Rule 60 motion itself, essentially the Estate argued that the court should deny the motion and could do so without taking evidence because the divorce decree was valid on its face and because Mr. Williams's death precluded further action in the Divorce Case. Ms. Williams argued that the decree should be set aside because it was entered in contravention of the waiting periods required by statute and local rule. Ms. Williams also argued that Mr. Williams's death did not, as a matter of law, prevent the relief she sought.

Ms. Williams's other ground for setting aside the divorce was that Mr. Williams had coerced her into signing the MDA and that she had been taken by surprise by his announcement that they were to meet the next day to sign the documents. She argued that she did not have the opportunity to review the documents, to seek independent legal advice, or to reflect on her options. She also argued that the MDA resulted in an inequitable distribution of property. The Estate argued that Ms. Williams should not be allowed to present evidence that Mr. Williams had coerced her into signing the MDA since his death made it impossible for him to dispute that allegation. The Estate also disputed her evidence of coercion and surprise, as discussed above.

The parties disagreed on which of the pending issues in the various cases should be decided first. The Estate took the position that the court should decide the issue of the validity of the divorce decree before deciding other issues, such as ownership of the annuities. The Estate also argued that the trial court could and should decide the validity of the divorce decree without an evidentiary hearing. Ms. Williams asserted that the court would need to hear evidence to decide the issue of the validity of the divorce decree if it reached the coercion issue. The court concluded that it would first decide whether it needed to hear evidence in order to rule on the Rule 60 motion and that an evidentiary hearing could be held thereafter if it was needed.

The trial court denied the motion for relief from judgment, holding first that Ms. Williams was not entitled to relief under Tenn. R. Civ. P. 60.02(3) because the decree was not void. The court also held that she was not entitled to relief under subsection (1) of the rule because the mistake she

alleged was one by the court, not the parties, or under subsection (5) because this situation did not rise to the level of extraordinary circumstances. With regard to Ms. Williams's claim under subsection (2), that the decree resulted from misconduct by Mr. Williams, the court stated:

> The issue is whether a party to an action can pursue relief from a judgment involving the other party to an action after the death of the party that allegedly committed the fraud and/or misconduct. . . . The Court is concerned about the public policy implications of allowing a party to institute an attack upon a judgment after the opposing party has died asserting that the deceased party committed fraud or misconduct which would entitle the moving party for relief from a judgment. Obviously, the deceased party cannot defend himself in such an action.

The court found that the fact that Ms. Williams waited until two months after the death of Mr. Williams to challenge the decree, along with her failure to appeal the decree, constituted "a seeming acquiescence" to the decree. The court found persuasive language in *Owens v. Sims*, 43 Tenn. (3 Cold) 544 (1866), that:

> Much mischief might be produced, if either party, in cases where the bonds of matrimony have been dissolved, were permitted, at any time within two years after the divorce, to obtain reversal of the decree, after seeming acquiescence for a time, by declining to appeal, and possibly after the party had again married.

*Id*. at 550-51.

Accordingly, the court found that Ms. Williams was not entitled to relief under Tenn. R. Civ. P. 60.02(2).

## A. Relief from Judgment After Death of Party

In the court below and on appeal, the Estate has asserted that Ms. Williams was not entitled to the relief she sought because the death of Mr. Williams abated the divorce action. Relying on "well-settled" law, the Estate asserted that a divorce action becomes a nullity after the death of a party because divorce is a personal action and the questions involved have been "answered by the inevitable decree of a higher tribunal than any earthly forum." *Swan v. Harrison & Morris, Ex'rs*, 42 Tenn. (3 Cold) 534, 540 (1865). Along with *Swan*, the Estate relies upon *Owens v. Sims*, 43 Tenn. (3 Cold) 544 (1866), *Vessels v. Vessels*, 530 S.W.2d 71 (Tenn. 1975), and *Steele v. Steele*, 757 S.W.2d 340, 343 (Tenn. Ct. App. 1988) (holding that a suit for divorce and alimony is "strictly a personal action, sounding in tort, and by all the rules and maxims of law lies (dies) with the person").

On the other hand, Ms. Williams asserts that while Tennessee law is clear that a deceased person cannot be divorced and, therefore, a pending divorce action terminates upon the death of a party, this principle does not apply after the entry of a final decree of divorce. Ms. Williams also

relies on *Steele*, quoting a different section, to the effect that if a court has entered a decree "the death of the spouse does not affect the matter." *Steele*, 757 S.W.2d at 342.

The parties' reliance on the cases cited implicates questions of abatement and revivor and the subtleties that lurk therein. Generally, actions which are pending when a party dies may continue upon substitution of a proper party. Tenn. Code Ann. § 30-2-320; Tenn. R. Civ. P. 25.01; *Mid-South Pavers, Inc. v. Arnco Constr., Inc.*, 771 S.W.2d 420, 422-23 (Tenn. Ct. App. 1989). Pending actions "which by law may survive against the personal representative" are considered claims against the estate. Tenn. Code Ann. § 30-2-320. However, that statute, by its terms, does not apply to claims already reduced to judgment. *In re Estate of Lucas*, 844 S.W.2d 627, 629-30 (Tenn. Ct. App. 1992). Tenn. Code Ann. § 30-2-505 provides that judgments obtained against the deceased in the deceased's lifetime may be revived without delay.

In addition, as a general rule, the death of either party does not abate an action "if the cause of action survives or continues." Tenn. Code Ann. § 20-5-101. However, some types of actions, specifically "actions for wrongs affecting the character" are abated by the death of a party. Tenn. Code Ann. § 20-5-102. An action for divorce, being purely personal, abates and cannot be revived after the death of a party. *Steele*, 757 S.W.2d at 342. The termination of the divorce cause of action abates all ancillary or interlocutory decrees; however, this rule expressly applies to a pending suit, where the party dies before entry of judgment.

While the application of these general principles to the case before us may be debated, the Tennessee Supreme Court has at least partially answered the question disputed by the parties herein in *Baggett v. Baggett*, 541 S.W.2d 407 (Tenn. 1976), where a wife sought to set aside a divorce decree after the remarriage and death of her husband. The basis for her claim was a lack of personal jurisdiction over her by the divorcing court. The wife had no notice of the divorce proceeding against her until after the husband died.

The Supreme Court determined that the first issue to be decided was whether the wife had a justiciable interest in setting aside the divorce decree "considering the fact that her husband died, thus dissolving the marriage relation, prior to the institution of this suit." The court acknowledged that the general rule was that, in the absence of affected property interests, "an application to vacate a decree of divorce does not lie after the death of a party . . . since the death itself severs the martial relation and the only object to be accomplished by the vacation of the decree would be sentimental." *Id*. 541 S.W.2d at 409 (citing *Rose v. Rose*, 176 Tenn. 680, 685, 145 S.W.2d 773, 775 (1940)).

> But, when the decree of divorce adversely affects property interests of the surviving spouse, the death of the other spouse does not defeat the right of the surviving spouse or his or her representative to institute vacation proceedings. This is permitted, not for the purpose of continuing the controversy regarding the right to a divorce itself, but to determine whether or not the surviving spouse has been deprived of property interest by reason of the change in his or her marital status brought about by the divorce decree. This action is considered to involve only the property interests.

*Baggett*, 541 S.W.2d at 409.

The Court explained that those property rights deemed sufficient to come within the rule were "those interests of which the surviving spouse has been wrongly deprived by the divorce. . . ." *Id.* Among the specific rights delineated by the Court were the right to a distributive share of the decedent's estate, and a surviving spouse's rights to pension or social security benefits. *Id.* The Court found that the surviving spouse's statutory right to veteran's benefits constituted a sufficient property interest which entitled the plaintiff to maintain the action attacking the validity of the divorce decree. *Id.* 541 S.W.2d at 409-10.

The distribution of marital property resulting from a divorce is not the type of property interest that will allow an action to set aside a divorce decree.

> *Baggett* and the other cases cited herein do not provide a means by which a party to a divorce can use the death of a former spouse to receive a more favorable property settlement than had been negotiated while the deceased was living.

*McMahon v. McMahon*, No. 85-349-II, 1986 Tenn. App. LEXIS 3012, at *6-*7 (Tenn. Ct. App. May 23, 1986) (no Tenn. R. App. P. 11 application filed) (citing *Larkin v. Larkin*, (Tenn. Ct. App. May 25, 1979)).

Instead, it would appear that the property interest must be one that is adversely affected by the change in status from spouse to former spouse. We conclude such a property interest exists in the case before us. Under the terms of Mr. Williams's will, Ms. Williams would inherit property as his wife. She is disinherited therefrom only by the operation of Tenn. Code Ann. § 32-1-202(a) by virtue of the divorce. In addition, Ms. Williams filed in the Probate Case a Petition for Homestead, Exempt Property, Year's Support and Elective Share seeking all statutory benefits to which a widow is entitled. This pleading was filed after the hearing on the motion *in limine* but before the court ruled on the Rule 60 motion in the Divorce Case. In this petition, Ms. Williams asserted she had sought to have the divorce decree set aside.

Of course, *Baggett* involved a challenge to a divorce decree as void because it was entered without personal jurisdiction. Thus, the holding is consistent with the general rule that a void decree may be attacked at any time and such a decree is unenforceable. *State ex rel. Ragsdale v. Sandefur*, 389 S.W.2d 266, 271 (Tenn. 1965); *Miller v. Morelock*, 185 Tenn. 466, 470, 206 S.W.2d 427, 429 (Tenn. 1947); *Team Design v. Gottlieb*, No. M1999-00911-COA-R3-CV, 2002 Tenn. App. LEXIS 508, at *32 (Tenn. Ct. App. July 18, 2002) (no Tenn. R. App. P. 11 application filed).

### B. Decree Not Void

Ms. Williams first asserts that the final order of divorce should have been set aside because it was entered by the trial court in contravention of Tenn. Code Ann. § 36-4-103(c)(1) which requires that a divorce petition on the ground of irreconcilable differences be on file for sixty (60) days prior

to the granting of a divorce.[2]  Although various of her arguments assert the divorce was "invalid as a matter of law," it is clear that she does not claim that the order was void, in recognition of the Tennessee Supreme Court's holding in *Gentry v. Gentry*, 924 S.W.2d 678 (Tenn. 1996).

In *Gentry*, the Supreme Court considered a claim that a divorce decree that had been entered without compliance with the statutory waiting period for irreconcilable differences divorces, the same statute relied on herein by Ms. Williams, was void.  The Court reaffirmed the standard for determining whether a judgment is void: whether the court had general jurisdiction of the subject matter, whether the judgment was wholly outside the pleadings, and whether the court had jurisdiction of the parties.  924 S.W.2d at 680-81.  The Court found that absent such a *prima facie* void decree, "a flaw in procedure" would not render a decree void.  *Id*. 924 S.W.2d at 681.  Because it was apparent the court entering the decree had subject matter over a suit for divorce, had personal jurisdiction over the parties to the divorce, and the decree was not outside the pleadings but instead granted the relief actually sought in the pleadings, the Court held the divorce decree was not void, but was either voidable or valid.  *Id*. 924 S.W.2d at 680.

Ms. Williams does not assert that the court entering the divorce decree herein was without either subject matter or personal jurisdiction or that the decree was wholly outside the pleadings.  On appeal, she does not rely on subsection (3) of Tenn. R. Civ. P. 60.02, "the judgment is void," as a ground for relief.  The divorce decree challenged by Ms. Williams in the instant case is not void.  The trial court obviously had general jurisdiction of the subject matter, a suit for divorce; the decree awarding the divorce was not outside the pleadings, it was the specific relief sought; and, the court had jurisdiction over the parties.

### C.  Relief Under Tenn. R. Civ. P. 60.02

Cognizant of *Gentry's* holding that a merely voidable order cannot be reversed through a collateral attack, Ms. Williams launched a direct attack by filing in the Divorce Case a Tenn. R. Civ. P. 60.02 motion for relief from judgment.  "If an action or proceeding is brought for the very purpose of impeaching or overturning a judgment, it is a direct attack upon it, such as a motion or other proceeding to vacate, annul, cancel or set aside a judgment, or any proceeding to review it in an appellate court . . . ."  *Turner v. Bell*, 198 Tenn. 232, 241, 279 S.W.2d 71, 75 (Tenn. 1955) (quoting *Jordan v. Jordan*, 145 Tenn. 378, 454, 239 S. W. 423, 445 (1921)).  Seeking Rule 60 relief in the Divorce Case was a procedurally appropriate method to bring the attack.  *Jerkins v. McKinney*, 533 S.W.2d 275 (Tenn. 1976).

Rule 60.02 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore

---

[2]Ninety days are required if minor children are involved.  Tenn. Code Ann. § 36-4-103(c)(1).

denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Tenn. R. Civ. P. 60.02.

The trial court denied Ms. Williams relief under Tenn. R. Civ. P. 60.02, and this court's review of that decision is limited to whether the trial court abused its discretion. *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000); *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993); *Ellison v. Alley*, 902 S.W.2d 415, 418 (Tenn. Ct. App. 1995).

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

Relief under Rule 60.02 is considered "an exceptional remedy." *Nails v. Aetna Ins. Co.*, 834 S.W.2d 275, 294 (Tenn. 1992). The function of the rule is "to strike a proper balance between the competing principles of finality and justice." *Banks v. Dement Constr. Co., Inc.*, 817 S.W.2d 16, 18 (Tenn. 1991) (quoting *Jerkins*, 533 S.W.2d at 280). In examining the purpose of Tenn. R. Civ. P. 60.02, our Supreme Court has said:

"Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules. . . ." Because of the importance of this "principle of finality," the "escape valve" should not be easily opened.

*Banks*, 817 S.W.2d at 18 (quoting *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991)).

The party seeking relief has the burden of showing grounds therefor; he or she must show that he is entitled to relief. *Spruce v. Spruce*, 2 S.W.3d 192, 194 (Tenn. Ct. App. 1999); *Howard v. Howard*, 991 S.W.2d 251, 255 (Tenn. Ct. App. 1999); *Davidson v. Davidson*, 916 S.W.2d 918, 923 (Tenn. Ct. App. 1995). There must be proof of the basis on which the relief is sought. *Lethcoe*, 18 S.W.3d at 624, *Banks*, 817 S.W.2d at 18; *Duncan v. Duncan*, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990). The movant must substantiate entitlement to the request by clear and convincing evidence. *Davidson*, 916 S.W.2d at 923; *Duncan*, 789 S.W.2d at 563.

In order to succeed, the moving party must describe the basis for relief with specificity. *Hopkins v. Hopkins*, 572 S.W.2d 639, 640 (Tenn. 1978); *Duncan*, 789 S.W.2d at 563. As a prerequisite to the extraordinary relief available under Rule 60.02, the movant is required to set forth in a motion or petition, or in affidavits in support thereof, facts explaining why the movant is entitled to relief. *See Travis v. City of Murfreesboro*, 686 S.W.2d 68, 69 (Tenn. 1985); *Bivins v. Hosp. Corp. of Am.*, 910 S.W.2d 441, 446 (Tenn. Ct. App. 1995); *Turner v. Turner*, 776 S.W.2d 88, 92 (Tenn. Ct. App. 1988).

Where the motion and supporting affidavits are insufficient to warrant relief from judgment, the motion is properly denied. *Ellison*, 902 S.W.2d at 417-18; *Jenkins v. Jenkins*, No. 01A01-9609-CV-00399, 1997 Tenn. App. LEXIS 487, at *6 (Tenn. Ct. App. July 16, 1997) (no Tenn. R. App. P. 11 application filed) (holding that because "Husband did not set forth facts and circumstances to justify invocation of the extraordinary relief afforded by Rule 60.02 either in his motion for relief from the judgment or in his accompanying affidavit," the trial court did not abuse its discretion in denying the motion after taking the affidavit and argument of counsel into consideration). Mere conclusory statements are not sufficient. *Ellison*, 902 S.W.2d at 417.

### (1) Mistake

First, Ms. Williams sought relief under Tenn. R. Civ. P. 60.02(1) on the basis that the trial court made a mistake in entering the divorce decree prematurely. The trial court, however, ruled that the "mistake" contemplated in Tenn. R. Civ. P. 60.02 was intended to address "excusable mistakes of parties or counsel, not an action by the court."

In *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976), our Supreme Court held that Tenn. R. Civ. P. 60.02(1) can be utilized by an aggrieved party in order to grant relief predicated upon a mistake of court. The mistake in *Jerkins* was the failure of the court clerk to provide counsel with a copy of an order overruling a motion for a new trial or notify counsel of the existence of such an order. Ms. Williams simply does not allege the type of mistake contemplated by Tenn. R. Civ. P. 60.02(1) or *Jerkins*. Ms. Williams is not arguing that a mistake of the court prevented her from finding out about the trial court's ruling. Rather, she argues that the court "mistakenly" entered the divorce decree before the expiration of the statutory waiting period. This is an assertion that the court failed to follow the law. Unlike the aggrieved party in *Jerkins*, Ms. Williams had knowledge of the final order of the trial court.

A mistake of law is not a ground for relief under Rule 60.02. *Spruce*, 2 S.W.3d at 195. Otherwise, "it is hard to conceive how any judgment could be safe from assault." *Food Lion, Inc. v. Washington County Beer Bd.*, 700 S.W.2d 893, 896 (Tenn. 1985). Even where it is alleged that the trial court, rather than one of the parties, committed a mistake of law, Rule 60.02 cannot be applied to provide relief. The proper remedy lies in appeal or a motion to alter or amend.

Further, the action by the divorcing court in entering the decree cannot be characterized as a mistake. We have no basis to determine that the court did not intend to enter the decree when it

did. The court entered the decree in accordance with the parties' agreement that grounds for divorce existed, that Ms. Williams waived her right to file an answer or contest the divorce, and that they had agreed upon the distribution of their property. Any failure to follow statutory procedures[3] was intentional, not a mistake.

We affirm the trial court's denial of Ms. Williams's motion for relief under Tenn. R. Civ. P. 60.02(1).

(2) Fraud or Misconduct of Mr. Williams

The second ground for relief sought under Tenn. R. Civ. P. 60.02 by Ms. Williams is based on her assertion that Mr. Williams engaged in some type of misconduct. Later filings make clear that the alleged misconduct involved Mr. Williams "surprising" Ms. Williams with his intention to get a divorce and with the documents themselves and his coercing her into signing them. She does not, however, assert that she requested more time or explain her failure to attempt to set aside the decree within thirty days after its entry.

As stated above, Rule 60 relief should be granted sparingly in deference to the principle of finality. In addition to final judgments, that principle is also particularly important in two situations which are present in the case before us: an attempt to set aside an agreed order disposing of an action and an attempt to rescind a contract.

A marital dissolution agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings. *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993); *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998). Such a contract is enforceable. *Holt v. Holt*, 995 S.W.2d 68, 72 (Tenn. 1999). "A property settlement agreement between a husband and wife is 'within the category of contracts and is to be looked upon and enforced as an agreement, and is to be construed as other contracts as respects its interpretation, its meaning and effect." *Bruce v. Bruce*, 801 S.W.2d 102 (Tenn. Ct. App. 1990) (quoting *Matthews v. Matthews*, 24 Tenn. App. 580, 593, 148 S.W.2d 3, 11-12 (1940)). Where the MDA or property settlement is incorporated into the decree of the court, the agreement with regard to division of property does not lose its contractual nature. *Gray*, 993 S.W.2d at 64; *Moore v. Moore*, No. 01-A-01-9708 -CV-00444, 1998 Tenn. App. LEXIS 831, at *5 (Tenn. Ct. App. Dec. 8, 1998) (no Tenn. R. App. P. 11 application filed) (citing *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975)).

Rescission of a contract "is not looked upon lightly" and "is available only under the most demanding circumstances." *Robinson v. Brooks*, 577 S.W.2d 207, 208 (Tenn. Ct. App. 1978).

---

[3]Even though the divorce decree granted the divorce on the ground of irreconcilable differences, the complaint alleged that ground and the ground of inappropriate marital conduct. The parties agreed to the existence of the ground of inappropriate marital conduct and that Mr. Williams was entitled to a divorce on that ground. The statutory waiting period for a divorce on the ground of irreconcilable differences would have no relevance to a divorce on another ground. "Bills for divorce on the ground of irreconcilable differences must have been on file sixty (60) days before being heard." Tenn. Code Ann. § 36-4-103(c)(1).

Further, the party seeking recission bears the burden of proof. *Williamson v. Upchurch*, 768 S.W.2d 265 (Tenn. Ct. App. 1988). When a contract is valid and no injustice will result, courts are "bound to enforce it." *Bush v. Cathey*, 598 S.W.2d 777, 781 (Tenn. Ct. App. 1979).

In the *Matthews* case, the court found that the separation agreement at issue "must be regarded as a contract, a settlement of disputes, a compromise and an arbitration." *Matthews*, 24 Tenn. App. at 593, 148 S.W.2d at 11. Consent decrees, compromise and settlement agreements, and agreed orders are favored by the courts and represent the achievement of an amicable result to pending litigation. A consent decree signed by the parties involved has been described as "about the most binding of agreements that can be made." *Bringhurst v. Tual*, 598 S.W.2d 620, 622 (Tenn. Ct. App. 1980) (citing *Smelcer v. Broyles*, 225 Tenn. 187, 190, 465 S.W.2d 355, 356 (1971); *Boyce v. Stanton*, 83 Tenn. 346, 375-76 (1885)). A consent decree is

> . . . a written judicial contract, duly acknowledged and executed, and conclusive upon the parties. It may be impeached and rescinded for fraud in its procurement; but otherwise it must stand. The parties may not appeal from it, or otherwise correct its errors. They may not recede from it or withdraw their consent to it.

*Boyce*, 83 Tenn. at 375-76.

In order to set aside or alter a consent decree, a party must show that the consent decree was entered through fraud or mistake. In the absence of fraud or mistake, a consent decree will stand as made unless it is vacated in the same manner as it was procured, by consent. *State ex rel. Bedford County*, 220 Tenn. 197, 206-07, 415 S.W.2d 139, 144 (1967); *Bringhurst*, 598 S.W.2d at 622.

In this regard, it is well settled that Rule 60.02 should not be used to relieve a party from his free, calculated, and deliberate choice in signing a settlement agreement. *Lethcoe*, 18 S.W.3d at 625; *Tyler v. Tyler*, 671 S.W.2d 492, 495 (Tenn. Ct. App. 1984). In addition, the failure to take legal steps to protect one's own interests precludes relief under Rule 60.02. *Hopkins*, 572 S.W.2d at 640; *Bivins*, 910 S.W.2d at 448. In *Lethcoe*, the choices referred to were: (1) to settle rather than litigate; (2) not to insist on other terms in the settlement agreement; and (3) not to appeal. Because a party "remains under a duty to take legal steps to protect his own interests," *Banks*, 817 S.W.2d at 19, these actions and inactions precluded relief under Rule 60.02(5). The same principle was applied in *Day v. Day*, 931 S.W.2d 936 (Tenn. Ct. App. 1996), to a decision not to appeal and in *Cain v. Macklin*, 663 S.W.2d 794 (Tenn. 1984), to a choice to ignore or not defend against a lawsuit. "Rule 60 is not a substitute for appeal and motions under the rule have been denied when made to avoid a party's decision to settle the litigation or forego an appeal." 11 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE, § 2851 (2d ed. 1987). We are aware that agreed orders of settlement are generally not appealable, but they are reviewable or modifiable by proper action taken within the time for appeal.

Of course, Ms. Williams claims that her agreement to the MDA, which included her agreement not to contest the divorce, was not a free and deliberate choice on her part, but rather was the product of her husband's coercion or of her "surprise" and lack of time to consider it.

In *Matthews*, a wife sued for divorce and asked that prior separation agreements be set aside because they were unfair and procured by fraud, coercion, and undue pressure. In *Matthews*, the wife was represented by counsel when the agreements were reached, a situation not present in the case before us. Nonetheless, some of the holdings of *Matthews* are relevant, including the following:

> So far as we can learn there was not concealment of a single fact, nor any misrepresentation of a fact, and no Damoclean sword kept hanging over the head of the wife during the negotiations. Hence the entire absence of any legal grounds upon which to base a decree annulling said contract.

*Id*. 24 Tenn. App. at 593, 148 S.W.2d at 11.

Although some authority indicates to the contrary, our courts have held that an MDA and the decree incorporating it can be set aside on the basis of duress. In *Brown v. Brown*, 863 S.W.2d 432, 434 (Tenn. Ct. App. 1993), this court considered a request under Tenn. R. Civ. P. 60.02 for relief from a divorce decree which incorporated an MDA. The asserted grounds for relief were misrepresentation or duress. Because the only evidence of fraudulent misrepresentation that was plead was insufficiently specific to support an accusation of fraud and had been available before the divorce judgment was entered, this court affirmed the trial court's denial of discovery related to the Rule 60 motion. In addition, we found there was no fraudulent concealment and the movant was not entitled to relief on that ground.

The court in *Brown* acknowledged that duress, if present, could justify relief from the divorce decree and MDA, citing *Gilley v. Gilley*, 778 S.W.2d 862 (Tenn. Ct. App. 1989). *Brown*, 863 S.W.2d at 435. Essentially, the wife testified that she agreed to the divorce, even though she did not want one, and signed the MDA because her husband had been violent at times during the marriage and she was afraid not to sign the documents. When asked about force and threats directly related to the signing of the documents, the wife stated, "He did not force me to sign anything. But the stress and the emotional strain I was under the last year and a half that we were married, I wasn't capable of making a decision that I had to make." This court concluded that the trial court correctly determined that this was not sufficient to invalidate a contract that had been approved by the court and incorporated into the judgment of the court and found that the decision was supported by the circumstance, among others, that there was a lack of overt threat of present harm. *Id*. 863 S.W.2d at 436.

This holding is consistent with general requirement regarding duress or coercion sufficient to set aside a contract. Duress is often defined in our case law as:

> an unlawful restraint, intimidation, or compulsion of another to such an extent and degree as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination. The alleged coercive event must be of such severity, either threatened, impending or actually inflicted, so as to overcome the mind and will of a person of ordinary firmness.

*McClellan v. McClellan*, 873 S.W.2d 350, 351-52 (Tenn. Ct. App. 1993). *See also Fed. Deposit Ins. Corp. v. Ramsey*, 612 F. Supp. 326 (E.D. Tenn. 1985).

However, we have also held in a case where the former wife attempted to set aside a divorce decree incorporating a MDA on the basis that her former husband coerced her into signing the MDA that his actions did not constitute misconduct under Tenn. R. Civ. P. 60.02(2). *Lee v. Lee*, No. 29, 1990 Tenn. App. LEXIS 448 (Tenn. Ct. App. July 3, 1990) (no Tenn. R. App. P. 11 application filed). That decision was based largely on federal court interpretations of the federal rule which is identical to Tennessee's Rule 60.02. As the *Lee* court found, the type of misconduct included in "fraud, misrepresentation, or other type of misconduct by an adverse party" is limited to the type that "prevented the other party from fully and fairly presenting its case." *Lee*, 1990 Tenn. App. LEXIS 448, at *4 (quoting *U.S. v. An Undetermined Quantity Of An Article of Drug Labeled As Benylin Cough Syrup*, 583 F.2d 942, 948 (7th Cir. 1978)). That rule has been applied uniformly by federal courts, where misconduct within the context of Fed. R. Civ. P. 60(b)(3) has been construed as that type of conduct affecting the litigation or thwarting the judicial process, with the result that a litigant was prevented from fully and fairly presenting his or her case. *See Furman v. Comm'r of Internal Revenue*, 785 F.2d 308 (6th Cir. 1986); *U.S. v. An Undetermined Quantity of an Article of Drug Labeled as Benylin Cough Syrup*, 583 F.2d 942 (7th Cir. 1978); *Harris v. Mapp*, 719 F. Supp 1317 (E.D.Va. 1989); *Gilmour v. Strescon Indus., Inc.*, 66 F.R.D. 146 (E.D. Pa. 1975), *affirmed*, 521 F.2d 1398 (3d Cir. 1975).

In *Lee*, the former wife testified that she signed the MDA because her husband had hit her before, she was afraid he would hit her again, she wanted to avoid further violent confrontations, and that he had grabbed her arm and told her she had to sign the MDA. The *Lee* court found that such conduct did not amount to misconduct under Rule 60.02(2). In addition to federal court interpretation of misconduct under the rule, the court also relied upon interpretations by Tennessee courts on the requirements of an allegation of fraud under the same provision of Rule 60.02. As the *Lee* court noted, our courts have held, with regard to a claim based upon fraud, that Rule 60.02 relief is warranted only when the moving party proves with clear and convincing evidence the existence of conduct by the non-moving party which amounts to:

> an intentional contrivance by a party to keep complainant and the Court in ignorance of the real facts touching the matter in litigation, whereby a wrong conclusion was reached, and positive wrong done to the complainant's rights.

*Duncan*, 789 S.W.2d at 563 (quoting *Leeson v. Chernau*, 734 S.W.2d 634, 638 (Tenn. Ct. App. 1987)).

The *Lee* court also found that there was no showing that the wife had been prevented from fully and fairly presenting her case after signing the MDA. *Lee*, 1990 Tenn. App. LEXIS 448, at *5. This holding is consistent with previously discussed authority regarding a conscious decision not to appeal or seek other relief. In the case herein, Ms. Williams has made no claim that she was coerced or otherwise prevented from seeking to set aside the divorce earlier. She has not explained why, after the surprise and shock produced by the suddenness of the situation which she claimed affected her ability to appreciate the significance of the documents presumably wore off, she never took steps to remedy the situation, either during the time for filing an appeal or a Rule 59 motion to alter or amend or thereafter, before Mr. Williams died and before she learned of the effect of the divorce on the will.

Against this background of the stringent requirements that Ms. Williams must meet to be entitled to relief, as well as the burden she has to overturn a discretionary decision by the trial court, her factual allegations must be considered. Those are found in the affidavit she filed in support of her motion for relief.[4] In that affidavit, she testifies that: on May 10, Mr. Williams informed her that he wanted a divorce and that they had an appointment to see his lawyer the next morning; prior to this discussion Mr. Williams had only once, "in passing," mentioned the possibility of a divorce; on the morning of May 11, Mr. Williams and Ms. Williams met with his attorney and she was not represented by counsel; Mr. Williams and his attorney asked her to sign the marital dissolution agreement and she did so; the divorce decree was entered that day; and after the divorce Mr. and Mrs. Williams continued to live together and discussed reconciliation.

There were simply no facts alleged which would come close to the type of coercion or duress that might be sufficient to set aside an agreed divorce decree under the most liberal standard.[5] It is

---

[4]Many of the facts cited by Ms. Williams in her brief are not "facts," but merely allegations. Ms. Williams's citations to the record are often citations to her statements by counsel made to the court during the various hearings herein. Statements by counsel are, of course, not evidence.

[5]As mentioned earlier in this opinion, Ms. Williams gave testimony in a deposition. Some of that testimony deals with the events of May 11. However, on appeal, Ms. Williams has taken the position that this court cannot consider her deposition or those David Garrett, Mr. Williams's attorney who prepared and filed the divorce documents, and Cindy Maniscalco, who worked in Mr. Garrett's office and testified regarding contact with Ms. Williams prior to the signing and filing of the divorce papers. Ms. Williams argues that these depositions were part of the record only in one of the Interpleader cases and cannot be used in any of the other cases, including the Divorce Case.

This argument disregards the trial court's and this court's consolidation of the cases. At the hearing on the motion *in limine*, the trial court discussed with counsel whether the cases should be consolidated. At the hearing on January 31, the court again discussed consolidation, indicating that it would be beneficial to consolidate the matters so issues could be resolved as necessary. After arguments regarding which issues should be decided first among the various cases and motions to stay some rulings pending decisions on other issues, the court stated:

> I'll go ahead and consolidate the matters as we discussed for the purposes of handling everything together in that regard. And we can always address these issues separately in the case.

(continued...)

-16-

important to note what Ms. Williams has not alleged or has specifically acknowledged. She does not dispute and agrees that Mr. Williams was entitled to a divorce on the ground of her inappropriate marital conduct. She does not allege that she was unaware of the property held by the parties, individually or jointly, or that Mr. Williams misrepresented or hid assets. She does not aver that she did not understand the documents she was signing or understand that she was waiving her right to contest the divorce.[6] We note that the MDA was notarized by a deputy clerk of the court and it reflected several handwritten changes initialed by both Mr. Williams and Ms. Williams.

Based upon the record before us, and our review of the authorities discussed above and presented by the parties, we cannot conclude that the trial court abused its discretion in denying Ms. Williams's motion for relief under Tenn. R. Civ. P. 60.02(2).

In finding that the question was whether one party to an action can pursue relief against the other, now deceased, party on the basis of alleged fraud or misconduct, the court expressed its concern regarding allowing testimony which could not be refuted by the deceased party. This language, of course, reflects the policy considerations behind Tennessee's Dead Man's Statute. That statute, found at Tenn. Code Ann. § 24-1-203, provides:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party.

---

[5](...continued)

Subsequently, an order was entered ordering that all four enumerated cases "be consolidated for hearing under the above-captioned case [the Divorce Case]." Although there may some ambiguity about the meaning of consolidation for hearing, the court clearly consolidated all the cases into one case, directing that the Divorce Case be the surviving case. The parties appear to have ignored this directive, and filings were made under various case styles and numbers. This court was also asked to consolidate the four cases, indicating the parties' assumption there were still four cases, and we granted the motion, simply stating that the cases "are hereby consolidated." While Ms. Williams asserts that this statement did not result in a consolidation of the records, we respectfully disagree.

In addition, we note that the taking of Ms. Williams's deposition prompted her motion to limit evidence in the Rule 60 proceedings, and the deposition was discussed in the hearings on that motion. We consider the deposition to be included in the record of the consolidated cases. Her deposition was filed after the order of consolidation and before the court ruled on the Rule 60 motion. A deposition of a party may be used by an adverse party for any purpose. Tenn. R. Civ. P. 32.01(2). In addition, Ms. Williams asserts that this court cannot consider the depositions because they were not considered by the trial court in making its decision. The trial court's order makes no reference to the depositions, but we cannot assume from that silence that the court did not consider them. They were filed before the court's ruling on the Rule 60 motion and, in our opinion, were available to the court for consideration in making its determination.

Nonetheless, we do not find it necessary to consider the deposition of Ms. Williams and the other depositions in order to resolve the question before us.

[6]She does argue that the suddenness of the situation put her "in a frame of mind where she was unable to appreciate the significance . . . and ramifications . . ." of the documents.

-17-

As this court has explained:

> The purpose of the statute is to "prevent the surviving party from having the benefit of his own testimony, when, by the death of his adversary, his representative was deprived of the decedent's version of the transaction or the statement." *Baker v. Baker*, 24 Tenn. App. 220, 142 S.W.2d 737, 744 (1940).

> While the general approach is to construe the exclusion narrowly, *Baker*, at 744, "transactions by" encompasses a large range of excludable testimony on things done in the decedent's presence. "Transactions with the intestate refer to things done in his presence, to which he might testify of his personal knowledge, were he alive. . . ." *Waggoner v. Dorris*, 17 Tenn. App. 420, 426, 68 S.W.2d 142 (1933) (quoting *Morris v. Norton (C.C.A.)*, 75 F. 912, 922).

*Burke v. Arnold*, 836 S.W.2d 99, 107 (Tenn. Ct. App. 1991).

There can be no question that the MDA was a transaction with the decedent. The prohibition in the statute does not apply to cases where the transaction at question did not increase or diminish the estate but concerned only the manner in which the assets will be distributed. *Petty v. Estate of Nichols*, 569 S.W.2d 840, 845-46 (Tenn. Ct. App. 1977); *Baker v. Baker*, 24 Tenn. App. 220, 230-31, 142 S.W.2d 737, 744 (Tenn. Ct. App. 1940). However, a spouse's demand for year's support and exempt property have been determined to have the effect of decreasing the estate. *Cantrell v. Cantrell*, 19 S.W.3d 842, 846 (Tenn. Ct. App. 1999). Ms. Williams filed such a demand herein in case the divorce were set aside. In addition, in the case before us, the MDA can be regarded as affecting the contents and size of Mr. Williams's estate, and Ms. Williams sought to have the MDA set aside, an action that would affect the size of the estate.

Neither party has raised the Dead Man's Statute, and the trial court did not specifically rely upon it, although the court referred to the policies underlying it. Because no evidentiary hearing was held, and no objection was made to the affidavit, the court was not called upon to rule on the admissibility of Ms. Williams's testimony regarding the signing of the MDA. However, we cannot conceive of how Ms. Williams could establish the "misconduct" she alleges without violating the statute.

In any event, the trial court's decision rests upon its determination that Ms. Williams had seemingly acquiesced in the divorce until she learned of its effect upon her inheritance and that her challenge should not be sustained in view of the policies favoring finality.

We affirm the decision of the trial court in denying Ms. Williams's motion for relief from the divorce decree under Tenn. R. Civ. P. 60.02(2).

### (3) Extraordinary Circumstances

Lastly, Ms. Williams sought relief under Tenn. R. Civ. P. 60.02(5), claiming that the facts and public policy issues present "extraordinary circumstances" justifying relief. She argues that "in a case such as this where the husband engaged in misconduct such as rushing the matter through while obtaining the divorce to the severe detriment of the wife's legal rights, public policy should weigh in favor of ensuring that justice is done if the preservation of marriage is no longer possible" and that the "facts of this case and the public policies of this State compel the rule's application here." The trial court felt that this was "not a case which rises to the level of such 'extraordinary circumstances' or 'extreme hardship' which would justify relief under Tenn. R. Civ. P. 60.02(5)," and denied Ms. Williams's motion on that basis. We agree.

Tenn. R. Civ. P. 60.02(5) reads like somewhat of a catch-all provision, allowing relief from a final judgment for "any other reason justifying relief from the operation of the judgment." Despite its broad language, the rule has been construed very narrowly by the courts of this state. *Lethcoe*, 18 S.W.3d at 625; *Underwood*, 854 S.W.2d at 97; *Henderson v. Kirby*, 994 S.W.2d 602 (Tenn. Ct. App. 1996); *Steioff v. Steioff*, 833 S.W.2d 94, 97 (Tenn. Ct. App. 1992); *Duncan*, 789 S.W.2d at 564; *Tyler v. Tyler*, 671 S.W.2d 492, 495 (Tenn. Ct. App. 1984). The standards of Rule 60.02(5) are more demanding than those applicable to the other grounds for relief under the rule. *MCNB Nat'l Bank of N.C. v. Thrailkill*, 856 S.W.2d 150, 154 (Tenn. Ct. App. 1993); *Duncan*, 789 S.W.2d at 564. In fact, relief under Rule 60.02(5) is only appropriate in cases involving extraordinary circumstances or extreme hardship. *Lethcoe*, 18 S.W.3d at 624 (citing *Underwood*, 854 S.W.2d at 97). "'[A]ny other reason' under Rule 60.02(5) is to be defined as a reason of 'overriding importance.'" *Banks*, 817 S.W.2d at 19. This case does not present extraordinary or exceptional circumstances, *Henderson*, 944 S.W.2d at 606, or issues of overriding importance, *Banks*, 817 S.W.2d at 19.

## II. The Annuities

In the Probate Case the Estate filed a complaint seeking a declaratory judgment that certain annuities belonged to the Estate and not to Ms. Williams. The annuities that the Estate claimed had been awarded to Mr. Williams in the final divorce decree, but Ms. Williams was still named as the beneficiary at his death. The Estate later amended the complaint, asking the trial court to impose a constructive trust over all the assets awarded to Mr. Williams in the divorce and to order Ms. Williams to convey any interest she had in the annuities to the Estate. The three annuities at issue were issued by Lincoln National, Guardian, and Hartford, and had a value of approximately $900,000.

Later, Lincoln National filed an interpleader action to determine the proper beneficiary of the proceeds of a death benefit payable pursuant to the terms of an annuity contract as a result of the death of Mr. Williams. Several months later, Guardian filed a motion to intervene in the Lincoln National case because it too sought a determination as to the proper beneficiary of an annuity contract purchased by Mr. Williams. Hartford filed a separate complaint for interpleader to determine the proper beneficiary of a third annuity contract. The interpleader actions were

consolidated with the Divorce Case and the Probate Case, where the issue of entitlement to the annuity of proceeds had been raised. The trial court granted summary judgment for Ms. Williams and awarded her the annuities.

The Estate appealed, arguing that the trial court should have imposed a constructive trust to defeat the award of the proceeds to Ms. Williams as the named beneficiary because the MDA specifically awarded Mr. Williams the annuity contracts at issue and, therefore, the trial court should have merely implemented and enforced the MDA. It is undisputed that during their marriage, Mr. Williams made Ms. Williams the beneficiary of the annuity contracts and that Mr. Williams did not change the beneficiary before his death.

In our review of the trial court's decision, we review the trial court's factual findings *de novo*, with a presumption of the correctness of the factual findings of the trial court. Tenn. R. App. P. 13(d). No such presumption applies to a trial court's conclusions of law, which we review *de novo*. *Id.*; *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). The questions of the right to the annuities' death benefit, the apportionment of estate taxes, and the interpleader's dismissal, as raised herein, all involve questions of law.

The trial court based its decision on *Bowers v. Bowers*, 637 S.W.2d 456 (Tenn. 1982), and stated:

> In *Bowers*, the husband died thirty-four (34) days after his divorce. The divorce decree provided that wife released husband from all claims and waived any other rights not provided for in the divorce decree. Husband never changed the designated beneficiary under an insurance policy after the divorce. After husband died, a dispute arose as to whether former wife or the children were entitled to the proceeds under the life insurance policy. *Id.* at 457.

> The Supreme Court held that former wife was entitled to the insurance proceeds. In so holding, the Court opined as follows:

>> Being a beneficiary of the life insurance of her ex-husband was not a "property right," a result of an "obligation to support a wife," a "right," or a "claim" which was waived and relinquished by the property settlement agreement. The husband was under no duty by law or by contract to have life insurance in the first place or to designate [wife] as the beneficiary of it; he could have changed the beneficiary at any time without encountering any of [wife's] rights; she simply had no claim with respect to the life insurance. Therefore the terms of the property settlement agreement do not affect the life insurance policy at all.

> *Id.* at 457-58.

In the instant case, Mr. Williams died fifty-four (54) days after the entry of the Final Decree, a period even longer than in *Bowers*. Yet at no time did he even begin the process of changing the designated beneficiary under the Annuity Contract. As a result, under the controlling authority of *Bowers*, this Court concludes as a matter of law that Ms. Williams is entitled to the proceeds payable under the Annuity Contract.

The trial court also noted that the Estate attempted to distinguish *Bowers* on the grounds that the divorce decree in *Bowers* did not expressly address the life insurance policy at issue. The Estate argued that the Williams MDA expressly referred to the annuity contract by name and number. The trial court determined that it could not conclude that "this distinction would cause the Supreme Court to carve out an exception to the *Bowers* rule of law."

In *Bowers*, the Supreme Court defined the single issue in that case as "whether a property settlement agreement incorporated in a divorce decree, wherein wife released husband from all claims should be construed as effecting a change in beneficiary of husband's life insurance, where wife was still the named beneficiary under the policy at the date of husband's death, thirty-four days after the divorce." 637 S.W.2d at 456. On that issue, the Court held that "the property settlement agreement had no force and effect whatever upon the life insurance policy and neither the agreement nor the divorce terminated wife's status as named beneficiary in the policy or her right to receive the proceeds." 637 S.W.2d at 459.

In Tennessee a change of beneficiary must be accomplished in substantial compliance with the terms of the insurance contract. *Sun Life Assurance Co. v. Hicks*, 844 S.W.2d 652, 654 (Tenn. Ct. App. 1992). Consequently, our courts have held that a provision in a will attempting to change the beneficiary cannot vary the provisions of the contract.

> [T]he language in a will does not operate to deprive the named beneficiary of her rights to the policy proceeds. *Cook v. Cook*, 521 S.W.2d 808, 813 (Tenn. 1975). When there is no attempt to change the beneficiary according to the procedures set forth in the policy, the law of this state provides that a constructive trust does not arise, requiring distribution according to the terms of the will, even though the testator clearly indicated in his will that he wanted the insurance proceeds to benefit an individual other than the named beneficiary. *Stoker v. Compton*, 643 S.W.2d 895, 898 (Tenn. App. 1981).

*Travelers Ins. Co. v. Webb.*, No. 01-A-01-9508-CH-00379, 1996 Tenn. App. LEXIS 44, at *6 (Tenn. Ct. App. Jan. 24, 1996) (no Tenn. R. App. P. 11 application filed).

It is well settled that divorce itself does not create a presumption that a former spouse is removed as a beneficiary. *Sun Life Assurance Co.*, 844 S.W.2d at 654. *Bowers* and its progeny established that a property settlement agreement also does not affect a designation of beneficiary. The same principles have been applied to a designation of beneficiary in an annuity contract,

*Teachers Ins. & Annuity Assoc. v. Harris*, 709 S.W.2d 592, 595 (Tenn. Ct. App. 1985), because there is no relevant distinction between an insurance contract and an annuity contract.

The Court's conclusion in *Bowers* rested in part upon its determination that being a beneficiary was not a right or claim arising out of the marital relationship and, therefore, was not included in the property settlement's language waiving or relinquishing such rights and claims.[7] 637 S.W.2d at 457-58. However, the Court also explicitly found that a property settlement agreement has "no force and effect whatever" upon a life insurance policy, indicating its reliance on legal requirements for changing a beneficiary. *Id.* at 459. The Estate argues that *Bowers* should not be applied herein because of the language of the MDA at issue. The Williams MDA listed, along with other assets, the three annuities, giving a value to each and awarding each to Mr. Williams "free of any claim by Wife." The Estate argues that the MDA explicitly grants the annuities to Mr. Williams and no further search for Mr. Williams's intent is required. It further asserts that a constructive trust should have been granted to prevent unjust enrichment to Kathryn Williams "as a matter of equity and good conscience."

There is nothing about the language in the MDA to make inapplicable the principles discussed above. Although *Bowers* interpreted general language waiving claims arising from the marriage, and Ms. Williams agreed to waive any claim to the annuities themselves, the fact remains that no attempt was made to change the beneficiary in compliance with the annuity contract provisions. If the explicit language of a decedent's will expressing an intent contrary to the designation of beneficiary cannot effectuate a change of beneficiary, certainly the "free of claim" language does not. We do not disagree that the MDA clearly awarded the annuities to Mr. Williams. As the owner, he was free to name any beneficiary he chose, including Ms. Williams, whether he was married to her or not.

We affirm the trial court's grant of summary judgment to Ms. Williams and the resulting award to her of the proceeds from the Lincoln National, Guardian, and Hartford annuities.

## A. Estate Taxes on the Annuities

As a result of the large size of Mr. Williams's estate, federal estate taxes were owed in the amount of $1,667,340. After the trial court awarded the Lincoln National annuity to Ms. Williams,

---

[7] In support of that determination, the Court relied upon and quoted with approval the following language from *Hergenrather v. State Mut. Life Assurance Co.*, 79 Ohio App. 116, 68 N.E.2d 833 (1946):

> "The right of the wife to recover the proceeds of the policy does not hinge on the existence of a relationship of husband and wife, but rather on the well established principles of contract law . . . . Her right did not arise out of the relation of husband and wife. True, she was his wife at the time the policy was issued and this fact undoubtedly was the reason why she was named as beneficiary, but her property interest in the policy did not arise out of the marriage relation."

*Bowers*, 637 S.W.2d at 458 (citations omitted).

-22-

the Estate sought injunctive relief relating to the estate's tax liability for the annuities on which Ms. Williams was the named beneficiary. The Estate requested that the trial court require Ms. Williams to immediately relinquish funds sufficient to cover the tax burden attributable to the annuities. The trial court declined to issue an injunction at that time.[8]

However, the trial court did release four accounts from a previous agreed order preventing the dissipation of assets in the Estate so that the Estate would be able to pay the tax liability. The trial court also required that the funds in the annuities be preserved pending a resolution of the issue regarding the tax liability. The trial court also ordered the parties to brief the tax liability issue. After a hearing, the trial court determined that Ms. Williams was responsible for her pro rata share of the estate taxes and awarded the Estate a judgment against her in the amount of $430,395.40 as that pro rata share. Ms. Williams appeals.

The Estate asserts that the trial court's allocation of tax liability should be upheld because: (1) it is an equitable apportionment consistent with Tenn. Code Ann. § 30-2-614; and (2) by operation of Tenn. Code Ann. § 32-1-202 the divorce deprived Ms. Williams of the benefit of the will's tax allocation clause. Ms. Williams maintains that the will itself governs and requires that all estate taxes be paid out of the Estate.

Tenn. Code Ann. § 30-2-614 addresses the proration of federal and state estate and inheritance taxes. It provides that where an executor has paid estate taxes,

> upon, or with respect to, any property required to be included in the gross estate of a decedent under the provisions of any such [tax] law, the amount of the tax so paid, **except in a case where a testator otherwise directs in the testator's will**, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues.

Tenn. Code Ann. § 30-2-614(b) (emphasis added).

Additionally, the statute directs that "so far as practicable, and unless otherwise directed by the will of the decedent" the executor is to pay the taxes before distribution of the estate. It specifically allows an executor to bring an action to recover from a person in possession of property

---

[8]The trial court explained its reasoning:

The Court feels like it doesn't have any legal authority at this point in time to order in essence Ms. Williams to make a decision as to whether it's a lump sum determination or not as to how those proceeds would be paid out to her. The Court's not ready to rule upon the merits of the issue of the liability for taxes for the proceeds under the annuity contracts.

The trial court's decision was based in part on the fact that Ms. Williams had not yet received any funds from the annuities and that the court had allowed her to choose an option for payment from among those allowed by each contract since there were tax consequences to Ms. Williams depending on that choice.

included in the estate for tax purposes but which passed outside the estate and never came into the possession of the executor, such as the annuities herein, "the proportionate amount of such tax payable by the persons interested in the estate with which such persons interested in the estate are chargeable under the provisions of this section." Tenn. Code Ann. § 30-2-614(c).

As the language of the statute makes clear, a testator may direct payment of taxes other than by proration and even other than equitably. Equitable apportionment under the statute is merely the default rule. *Union Planters Nat'l Bank v. Dedman*, 86 S.W.3d 515, 519 (Tenn. Ct. App. 2001). A direction by the testator makes the statute inapplicable. *Wolfe v. Mid-Continent Corp.*, 222 Tenn. 348, 355-56, 435 S.W.2d 836, 840 (1968).[9]

Because Mr. Williams "otherwise directed" the apportionment of taxes, the statutory equitable proration does not apply. Where a testator has directed how taxes are to be paid, "the executors are not privileged to ignore the will even though some indirect benefits may accrue to persons not claiming title to property pursuant to its provisions." *Wolfe*, 222 Tenn. at 356, 435 S.W.2d at 840 (quoting *Commerce Union Bank v. Albert*, 201 Tenn. 631, 635-36, 301 S.W.2d 352, 354 (Tenn. 1957)). Mr. Williams gave specific direction regarding the payment of taxes in his will:

> Except as otherwise provided herein, I further direct that all estate, inheritance, generation-skipping transfer and other taxes of the same nature which are payable because of my death with respect to the property comprising my estate for such tax purposes, whether or not such property passes under this Will and whether such taxes are payable by my estate or by any recipient or beneficiary of any such property, shall be paid entirely out of my residuary estate (after any reductions due to amounts passing to Kathy H. Williams, whom I hereinafter refer to as my wife) as an expense of administration and without apportionment, and with no right of reimbursement from any recipient or beneficiary of any such property. Any interest and penalties payable with respect to said taxes shall be a charge against the income from my residuary estate. Each portion of my residuary estate with respect to which a federal or state generation-skipping transfer tax, if any, is payable, including any interest or penalties thereon, shall be charged directly with such tax. My Executors, in their sole and absolute discretion, may use the proceeds of any life insurance payable to my estate for the payment of debts or taxes.

This clause evidences the testator's intent to have the Estate bear the burden of any tax liability rather than placing that burden on the beneficiaries of his estate. His clearly stated intent was to have his property transfer to its recipients free of an estate tax burden "whether or not such property passes under this Will and whether such taxes are payable by my estate or by any recipient

---

[9]When the residuary estate, or other portion of the estate designated by the testator for the payment of estate taxes is not sufficient for that purpose, Tenn. Code Ann. § 30-2-614 applies to allow the executor to recover a proportionate share of taxes from beneficiaries. *Dedman*, 86 S.W.3d at 520. No claim has been made in this case that any such insufficiency exists.

or beneficiary of any such property." Thus, the annuities passing to Ms. Williams as the named beneficiary are clearly covered. *See Marler v. Claunch*, 221 Tenn. 693, 699-700 420 S.W.2d 452, 455 (1968) (holding that dissenting widow, unnamed in the will, was not chargeable with any of the estate taxes in view of the language in the will directing executor to pay all taxes with respect to the estate regardless of whether or not such beneficiary was named in the will); *Merchants & Planters Bank v. Myers*, 644 S.W.2d 683, 687 (Tenn. Ct. App. 1982) (holding that the term "all taxes" in a will was broad enough to exonerate nontestamentary property from the burden of estate); Maurice T. Brunner, Annotation, *Construction and Effect of Will Provisions Relating to the Burden of Estate or Inheritance Taxes*, 69 A.L.R. 3D 122 (2002).

Further, under the tax allocation clause of Mr. Williams's will, the Estate has no right of reimbursement from a recipient of such property, herein Kathryn Williams. Consequently, Ms. Williams was subject to no requirement that she pay a proportionate share of the estate taxes from the annuities she received as beneficiary thereof, and there was no basis for the judgment against Ms. Williams for that liability, as long as she is entitled to assert the benefit of the tax allocation clause.

The Estate argues that as a result of the trial court's decision to uphold the validity of the divorce, Ms. Williams is not entitled to the benefit of the Estate shouldering the tax burden because Tenn. Code Ann. § 32-1-202 revokes any provision in Mr. Williams's will which would benefit Ms. Williams. Ms. Williams argues that the only provisions of the will that were revoked by operation of the statute are those listed in the statute itself.

Tenn. Code Ann § 32-1-202 provides, in pertinent part:

(a) If after executing a will the testator is divorced or the testator's marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse, any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as executor, trustee, conservator or guardian, unless the will expressly provides otherwise.

(b) Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent but the provisions of § 32-3-105 shall not apply. Other provisions conferring some power or office on the former spouse are interpreted as if the spouse failed to survive the decedent.

The Estate first argues that the statute results in the revocation of all provisions in Mr. Williams's will that benefit Ms. Williams, "including any direction rendering an indirect benefit upon Kathryn L. H. Williams such as a direction for the Estate to pay taxes." In support of this statement, the Estate relies upon *Third Nat'l Bank v. Cotten*, 536 S.W.2d 330 (Tenn. 1976), which

involved a dispute over apportionment of estate taxes to a widow who dissented from the will.[10] While assuming, without ruling, that the tax allocation clause of the will in question required that such taxes be paid from the residuary estate and not charged to the beneficiaries, the Court held the widow could not take advantage of the tax allocation provision because of another provision of the will which provided that "if his widow should dissent and take against the will, **any provision in the will in her favor** would become void." 536 S.W.2d at 332 (emphasis added).

The language "any provision of the will in her favor" varies significantly from the statute's language listing specific grants that are revoked. We cannot equate the two or assign the same legal consequence to them. With regard to Tenn. Code Ann § 32-1-202, our Supreme Court has stated:

> The purpose of the statute is not to confer rights that do not exist, but to eliminate the devise to a former spouse and pass the property to the next taker, whether under the will or by intestacy. Nor is the purpose of the statute to cure deficiencies in the will or to provide opportunities for the courts to speculate about a testator's intent.

*In re Walker*, 849 S.W.2d 766, 770 (Tenn. 1993).

Ms. Williams argues that the benefit to a beneficiary or recipient of property from the tax allocation clause is not a disposition or appointment of property, a power of appointment or a nomination as a fiduciary and that this specific list cannot be enlarged to include any indirect benefit. We agree that the Estate's argument in essence asks us to interpret Tenn. Code Ann. § 32-1-202 to include items not expressly included therein. The rules of statutory construction which courts must follow are well-settled:

> The purpose of statutory construction is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) (citation omitted). Courts must restrict their review "to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent." *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998) (citing *Austin v. Memphis Pub. Co.*, 655 S.W.2d 146, 148 (Tenn. 1983)). The construction of a statute is a question of law subject to *de novo* review without a presumption of correctness. *Ivey v. Trans Global Gas & Oil*, 3 S.W.3d 441, 446 (Tenn. 1999).

---

[10]Although not pursued in detail, the Estate asserts the particular applicability of the *Cotten* case because the "instant case involves both a dissent from the will and a revocation of the will by statute because of the divorce of the parties." However, the Estate does not assert that Mr. Williams's will had a provision similar to that in *Cotten* depriving the widow of all benefits of the will if she dissents. Our review of the will reveals no such provision. In fact, Mr. Williams provided "In addition to any other method of disclaimer or release recognized by law, my wife or her executor may disclaim or release any interest under this will . . . ." The differences in the two wills and the fact that Ms. Williams has been found to be the ex-wife and not the widow make any attempted dissent on her part irrelevant to this issue.

*Robinson v. LeCorps*, 83 S.W.3d 718, 722-23 (Tenn. 2002).

The statute revokes three specific types of provisions in a will and no others. The first, and the one at issue herein, is "any disposition or appointment of property." The natural and ordinary meaning of that language does not include any indirect benefit which might accrue from the terms of the will to a former spouse as well as other recipients of property. As our Supreme Court has previously stated, "the statute's effect is focused on property" and its purpose is "to eliminate the devise to a former spouse." *In re Walker*, 849 S.W.2d at 769.

In addition, just as Ms. Williams was awarded the annuities because Mr. Williams made her the beneficiary of those annuities and did not change the designation of beneficiary, and not because she was his wife or his widow, Ms. Williams receives the benefit of the tax allocation clause because she is a recipient of property passing other than under the will, not because she was Mr. Williams's wife at the time he executed the will. Any other person receiving property from the Estate would have the same benefit. The legislative purpose behind Tenn. Code Ann § 32-1-202 is related to the effects of the dissolution of a marital relationship, and we do not see how that purpose is furthered by expanding the statute as urged by the Estate.

We conclude that Tenn. Code Ann. § 32-1-202 does not revoke the will's tax allocation clause as applied to Ms. Williams, or to anyone else, and that the tax allocation clause supersedes the statutory method of proration of estate taxes. Consequently, we conclude that the trial court erred in awarding a judgment to the estate for the amount of taxes attributable to the annuities it awarded Ms. Williams. Accordingly, we vacate the decision of the trial court awarding the Estate a judgment against Ms. Williams in the amount of $430,395.40.

## B. Interpleader Appeal

None of the stakeholders in the Interpleader Cases has an interest in which of the competing claimants was or is awarded the annuities. Hartford is the only annuity company to file a brief on appeal. Hartford's complaint is that upon its offer to deposit the annuity proceeds with the trial court, it was entitled to be dismissed from the lawsuit it brought.[11] It also asks this court to allow it to make such a deposit and to dismiss it. Hartford also seeks attorney's fees on appeal.

After determining that Ms. Williams was the beneficiary under the annuities, the trial court ordered Hartford to "pay Ms. Williams the proceeds of the annuity contract pursuant to any option under the terms of the annuity contract which she may elect." The trial court's order also stated that "upon payment [of the annuity], pursuant to the annuity payment option selected by Ms. Williams, [Hartford] shall be relieved of all obligations to any other party to this cause and shall be held harmless for any other claims to said funds." Further, the trial court ordered that if Hartford distributed any of the proceeds of the annuity contract to Ms. Williams pursuant to a payment option

---

[11]Ms. Williams argues this issue was raised for the first time on appeal, but in fact Hartford sought to deposit the amounts it held pursuant to the annuity contract into the court in its initial interpleader petition in the trial court.

selected by Ms. Williams, "such proceeds shall be held in escrow by counsel for Ms. Williams pending further orders of the Court."

According to Tenn. R. Civ. P. 22.02:

> Any property or amount involved as to which the party seeking interpleader admits liability **may**, upon order of the court, be deposited with the court or otherwise preserved, or secured by bond in amount sufficient to assure payment of the liability admitted. . . . Upon hearing, the court **may** order the party seeking interpleader discharged from liability as to property deposited or secured before determining the rights of the claimants thereto.

(emphasis added).

While often a disinterested interpleader is dismissed upon payment of the disputed property into court, *see*, *e.g.*, *Lebanon Bank & Trust Co. v. Grandstaff*, 141 S.W.2d 924, 927 (Tenn. Ct. App. 1940), we find no language in Tenn. R. Civ. P. 22 to mandate that such procedure be followed in every case. Hartford has provided us with no authority holding that the trial court does not have the discretion implicit in the rule's use of the word "may." The language of Tenn. R. Civ. P. 22.02 does not indicate that the court must dismiss the interpleader from the action either prior or subsequent to the determination of the proper claimant. Rather, the rule gives the court the discretion to make that determination.

The annuities involved herein apparently had various payout options, and Ms. Williams, as the recipient, had the choice of those options, after consideration of tax and other consequences.[12] A unilateral action by Hartford to pay the amount due under only one option into the court would have removed or limited those choices. Consequently, the trial court acted reasonably and responsibly in determining first who was the proper recipient and then ordering Hartford to pay the proceeds to that recipient in accordance with its policy provisions. Further, the court took steps to preserve the property if it were paid. Therefore, we conclude the trial court acted within its discretion.

---

[12]In its complaint for interpleader, Hartford asserted that:

Pursuant to the terms of the Contract, Hartford is obligated to either pay the proceeds into the Estate, if the Estate is designated as the proper beneficiary, or, rather, Hartford is obligated to pay the proceeds to Ms. Katherine Williams, if Ms. Katherine Williams is the proper beneficiary of payments. If Ms. Katherine Williams is determined to be the proper beneficiary under the Contract, then she would also have the option of requesting a "spousal continuation election notice," which may allow for the deferral or payments until a later date, or to elect that Hartford immediately pay her the guaranteed death benefit pursuant to the contract.

The correctness of Hartford's interpretation of its annuity contract has not been raised.

With regard to Hartford's request that we dismiss it from the appeal, we would simply point out that it voluntarily filed a brief raising the issue discussed above. Since Hartford asked us to rule on that issue and we have done so, dismissal is not appropriate. Because the trial court entered an order regarding Hartford's payment of the proceeds, an order from this court allowing Hartford to pay the proceeds into court is also not appropriate. We further decline to award Hartford attorney's fees for its participation in this appeal.

### III. Claims Against the Estate

The final issue in this consolidated case involves claims against the Estate made by Ms. Williams. On October 14, 1999, Ms. Williams filed a claim against the Estate for two loans made to Mr. Williams. She attached two checks, one dated September 16, 1996, in the amount of $55,000, and one dated February 18, 1997, in the amount of $40,000. Both checks had the word "Loan" typewritten in the memo portion.[13] The Estate filed an exception to the claims for the loans on January 14, 2000. On March 15, 2000, Ms. Williams attempted to amend the original claim against the estate for loans made to Mr. Williams by changing the supporting documentation for the $55,000 loan from one check to two checks dated November 25, 1996, in the amount of $45,000, and December 6, 1996, in the amount of $10,000, for a total of $55,000. The Estate filed an exception to this amended claim on March 29, 2000.

The Clerk & Master held a hearing on Ms. Williams's claims and, at the hearing, stated:

I don't believe that the exception was timely filed and I agree that this Court cannot extend this time for the exception. I come back to the main problem with the validity of this claim on its face, and if it is utterly void and unenforceable on its face, an exception does not need to be filed. . . . I think we first have to look at this enforceability, the validity on its face. . . .

At that point, the Clerk and Master asked each party to submit briefs regarding the validity of the documentation submitted as proof of the loans and the timing of the exceptions filed by the Estate. In a report issued on September 13, 2000, the Clerk & Master determined that:

Because the amended claim states a new cause of action, it cannot relate back to the original claim. *See Cooper's Estate v. Keathley*, 27 Tenn. App. 7, 177 S.W.2d 356 (Tenn. 1943). The supporting documentation submitted with the claim evidences purported loans made on September 18, 1996,[14] and February 18, 1997. The

---

[13] She also filed claims for funeral and burial expenses. These claims are not at issue on appeal as the parties entered an agreed order on July 11, 2000, reimbursing Ms. Williams for $13,312.80 in funeral and burial expenses.

[14] This date is a mistake and should read September 16.

amended claim alleges purported loans made on November 25, 1996,[15] and February 18, 1997.  By changing the date and the evidencing documentation, an entirely new and different loan was alleged in the amended claim and cannot relate back to the original claim.  Therefore, only the original claim for loans on September 18, 1996, and February 18, 1997, may be considered by this court.

The Clerk and Master cannot find that the claim is void on its face.  The claim was filed in proper form and properly verified.  T.C.A. § 30-2-307(b) requires a copy of a written instrument that evidences a claim.  Whether copies of checks will support a claim for loans is a question of fact and of law; their sufficiency cannot render the claim void on its face.

The Clerk and Master found that the original claim was timely filed, but the exception to that claim was not, and, consequently, that the claim was a final judgment against the Estate.

The Estate objected to the report filed by the Clerk and Master and sought to have it rejected and/or modified by the trial court.  Ms. Williams filed a motion for the trial court to confirm the report.  On November 9, 2000, the trial court adopted the report in part and rejected the report in part. The trial court adopted the Clerk & Master's finding that the amended claim could not relate back to the original claim because it stated a new cause of action, relying on *Cooper's Estate v. Keathley*.  In addition, the trial court found:

> Even though the amended claim cannot relate back, the Court is now faced with two different pleadings filed by the claimant for $55,000.  The amended claim sworn to by Ms. Williams on March 9, 2000 alleges that the $55,000 claim was the result of two separate loans made on 11/25/96 and 12/6/96 rather than the $55,000 loan made on 9/16/96 as set forth in the original claim.  Therefore, even though an exception was not timely filed to the original claim, the Court cannot allow a judgment against the estate for $55,000 for a loan on 9/16/96, when the amended claim on its face indicates the original loan for $55,000 on 9/16/96 is not proper.  The Court will extend the principles articulated in *Miller v. Morelock*, 206 S.W.2d 427 (1947) to not only the original claim but to any purported amendment to the original claim.  Taking the pleadings filed by the claimant as a whole, the Court finds that the claim for $55,000 is void and therefore the Clerk & Master's Report as to that amount shall be modified accordingly.  Claimant shall have a judgment for $40,000.

The Estate filed a motion to alter or amend the decision of the trial court pursuant to Tenn. R. Civ. P. 59.  The trial court denied the request, and both parties appealed.  Because the issue presents questions of law, we review the trial court's decision *de novo*.

---

[15]The amended claim related only to the $55,000 loan and was supported by checks dated November 25, 1996 and December 6, 1996, totaling $55,000.

The procedure for filing and excepting to a claim against an estate is governed by Tenn. Code Ann. § 30-2-306, *et seq.* Creditors who receive actual notice of the death of the decedent have four months in which to file a claim against the estate, and the four month time period begins to run on the date on which the notice to creditors is first published. If a claim against the estate arising from a debt of the decedent is not filed within the statutory time period, it is barred.[16] Tenn. Code Ann. § 30-2-301(a)(1).

When a claim is evidenced by a written instrument, that written instrument must also be filed with the court. Further, every claim must be verified by an affidavit of the creditor which states that the claim is a correct, just and valid obligation of the estate; that neither the claimant nor any other person on the claimant's behalf has received payment thereof, and that no security therefore has been received. Tenn. Code Ann. § 30-2-307(a)(2)(b). The mere acceptance for filing of a claim does not create an inference as to whether the claim is valid or timely filed. Tenn. Code Ann. § 30-2-307(a)(2)(d).

An exception to a claim may be filed by the personal representative or any party interested in the estate by filing a written exception within "thirty (30) days after the expiration of the four (4) months from the date of the notice to creditors given as provided in § 30-2-306(c)." Tenn. Code Ann. § 30-2-314(a).[17] Each exception is required to include a reasonably detailed explanation of the ground upon which the person making the exception intends to rely. Tenn. Code Ann. § 30-2-314(a).

After the exception is filed, the court "shall hear and determine all issues arising upon all such exceptions" and no other pleadings are required. Any testimony can either be oral or by deposition. Tenn. Code Ann. § 30-2-315. If no exception is filed, the court may, after ninety days, where no independent suit is pending, enter judgment against the estate for the claim, upon motion by the claimant and notice to the estate. Tenn. Code Ann. § 30-2-316.

There is no dispute herein that no timely exception was filed to Ms. Williams's original claim. When a claim is timely filed, is within the type contemplated by the statute, and is *prima facie* valid, failure to file an exception within the time allowed by law generally requires the court to treat the claim as a judgment against the estate. *Coin Automatic Co. v. Estate of Dixon*, 213 Tenn. 311, 317, 375 S.W.2d 858, 861 (Tenn. 1963); *Wilson v. Hafley*, 189 Tenn. 598, 608, 226 S.W.2d 308, 312 (Tenn. 1949); *Miller*, 185 Tenn. at 469, 206 S.W.2d at 429. There are exceptions to this general rule, however, the relevant one being where the claim is utterly void and unenforceable.

---

[16]While Tenn. Code Ann. § 30-2-307(a)(1) states that all claims are barred unless filed within the period prescribed in the notice published or posted in accordance with § 30-2-306(c), Tenn. Code Ann. § 30-2-307(a)(1)(A) & (B) provide exceptions to the general four month rule in situations not present here.

[17]Again, the time for filing an exception is extended if the time for filing the claim was extended. *See* fn 15. Tenn. Code Ann. § 30-2-314(a).

In *Miller v. Morelock*, the executor who had failed to file timely exceptions to three claims filed by Mr. Morelock, sought a declaratory judgment regarding his obligation to pay the claims. His objection to the first two was that they were exorbitant. As to those two claims, the Court held, "Since the claim appeared prima facie valid as to these two items the only manner in which objection thereto could be made on the ground of being exorbitant was by exception" filed in the probate court within the statutory period. *Id.* 185 Tenn. at 470, 206 S.W.2d at 429. However, the third claim was considered differently on the basis of the following principles:

> As noted, the bill alleges that the third item in the claim "is utterly void and unenforceable." If an alleged creditor files a claim which shows upon its face that it is "utterly void and unenforceable," then the executor is not liable for the payment thereof even though no exception thereto was filed within the thirty day period allowed by Section 3 of the Act. This is necessarily true because a void instrument is in contemplation of law an instrument which never existed. Analogous is the holding of this Court in *Holmes v. Eason*, 76 Tenn. 754, page 760, wherein this Court held: "A void judgment is in legal effect no judgment. It neither binds nor bars any one. All acts performed under it, and all claims derived from it are void. Parties attempting to enforce it are trespassers. No action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, can invest it with any of the elements of vitality." *Sherrell v. Goodrum*, 3 Humph. [419], 430; Freem. on Judgments, sec. 117. "No action is required to revoke it; it is null in itself." Therefore, if the claim filed is void on its face the legal effect is the same as if the claim had never been filed.

*Id*.

The unenforceable claim in *Morelock* was based upon the claimant's assertion that the decedent had given him a piece of real property. Although the claimant alleged the decedent had at one point delivered the deed to him, he also alleged the decedent had taken the deed back and then sold the real property. Delivery of the deed is essential to pass title to a grantee, and the Court found that the facts as alleged were inconsistent with the claimant's conclusion that the deed was delivered to him. Because the claim was based upon nothing more than an unfulfilled promise to give the land to claimant, the Court determined the claim to be utterly void and unenforceable. The estate, therefore, was not liable for the claim even though no exception was timely filed.

In *Coin Automatic*, the Court reaffirmed that where a claim is void, an exception is unnecessary because the legal effect of a void claim is as if the claim had never been filed. *Coin Automatic*, 213 Tenn. at 318, 375 S.W.2d at 861. In that case, the claim, unexcepted to within the time limit, was for unliquidated damages arising from a breach of contract. The Court held that although it could not say the claim was void on its face, the claimant was still not entitled to judgment even though no timely exception had been filed. Noting that default judgments are not favored, the Court explained that it would be dangerous to establish a precedent whereby a claim for unascertained damages could ripen into a judgment from which there is no relief simply by the

combined acts of filing such a claim and the failure of the administrator to file a timely objection. *Id*. 213 Tenn. at 321, 375 S.W.2d at 862.

Similarly, in *Wilson v. Hafley*, the Court again stated that if a claim is unenforceable, "then no exceptions would necessarily have to be taken and the estate would not be bound thereby." *Wilson*, 189 Tenn. at 609, 226 S.W.2d at 312. In a petition to rehear, the estate in *Wilson v. Hafley* asserted the claim at issue was utterly void and unenforceable because it was actually a claim against the decedent's husband. The Court found that the claim on its face alleged the debt was owed by the decedent and, although at that time ordinarily the husband was liable for the items set out in the claim, a wife could also be legally responsible under the Married Women's Acts. *Id*. 189 Tenn. at 610-11, 226 S.W.2d at 313. "The claim being filed against the wife's estate, nothing else appearing, we must assume the credit was lent her and not the husband." *Id*. The clear implication is that if the wife were not legally responsible for the debt underlying the claim, her estate would not be held liable even though no timely exception was filed. In such a situation, the claim would be utterly unenforceable.

Finally, in *Gray v. Estate of Gray*, 993 S.W.2d 59 (Tenn. Ct. App. 1998), co-administrators did not file an exception to a claim filed by Ms. Gray against the estate of her former husband for amounts due her under the MDA incorporated into their divorce decree. However, when Ms. Gray petitioned for an order of judgment on her claim, the co-administrators asserted that the amount of her claim should be reduced by the proceeds she received from a life insurance policy on her former husband which he had been required to maintain to secure some of his obligations under the MDA. In the portion of the opinion relevant to the issue herein, this court found that, although no exception had been filed to Ms. Gray's claim, principles of equity required that the amount of the claim be reduced by those items which the insurance policy was designed to cover. *Id*. 993 S.W.2d at 66.

While a claim is not void or deemed a nullity simply because of defects as to form, *Wilson*, 189 Tenn. at 606, 226 S.W.2d at 311, where it is unenforceable as a matter of law, the failure to file an exception does not require the courts to enter a judgment on the claim. We are of the opinion that the claims by Ms. Williams based upon alleged loans to Mr. Williams during their marriage are unenforceable because the MDA settled all property rights between them. The failure of the Estate to timely except to her claim does not convert that otherwise unenforceable claim into a judgment which the courts must recognize and enforce.

The MDA was a settlement of all claims and obligations between the parties. In that document, Ms. Williams agreed that she had full knowledge of Mr. Williams's assets and liabilities and agreed that the MDA "is intended to be a final settlement of all property rights and support rights and obligations of the respective parties hereto." Each party waived all rights of claims to the other's property. In addition, by signing the MDA, Ms. Williams agreed there were no other undertakings other than those set forth therein. Mr. Williams was awarded all the bank accounts in his name, "free of any claim by Wife." Other accounts were specifically awarded to each of the parties, free of any claim by the other.

Our interpretation of the MDA is guided by the central tenets of contract construction. The court's role in resolving disputes regarding the interpretation of a contract is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used. *Guiliano v. Cleo*, 995 S.W.2d 88, 95 (Tenn. 1999); *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). The purpose of interpreting a written contract is to ascertain and give effect to the contracting parties' intentions, and where the parties have reduced their agreement to writing, their intentions are reflected in the contract itself. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002); *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999). The rights and obligations of the parties are governed by their written contract and, therefore, it is incumbent upon the courts to enforce contracts according to their plain terms. *Hardeman County Bank v. Stallings*, 917 S.W.2d 695, 699 (Tenn. Ct. App. 1995).

Ms. Williams alleged that the loans at issue were made in late 1996 and early 1997, well before the divorce and the MDA. The MDA settled all obligations between the parties. Thus, in the MDA Ms. Williams settled the debt; there was no debt outstanding after the MDA. She not only waived her right to assert a claim for pre-divorce obligations, but she simply had no obligation owed to her and, therefore, no basis for a claim.

Although the claim itself did not reveal it was fatally flawed because there was no debt existing, the courts are not limited to the four corners of a filing designated a claim. The Estate had filed the divorce decree and MDA in the Probate Case in conjunction with its complaint for declaratory judgment filed September 3, 1999. Ms. Williams also filed the divorce decree and the MDA in the Probate Case along with her motion to intervene on September 8, 1999. Thus, the MDA was part of the record before the claim was filed.

We are also of the opinion that Ms. Williams's claim would be precluded by the doctrine of *res judicata* which promotes finality in litigation. *Lien v. Couch*, 993 S.W.2d 53, 55 (Tenn. Ct. App. 1998). The doctrine bars a second suit between the same parties on the same cause of action as to all issues which were or could have been litigated in the former suit. *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995); *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987).

The principle of claim preclusion prevents parties from splitting their cause of action; it requires parties to raise in a single lawsuit all the grounds for recovery arising from a single transaction.[18] *Lien*, 993 S.W.2d at 56. Consequently, the doctrine of *res judicata* bars the litigation

---

[18]In a prior holding this court stated:

The rule [of *res judicata*] requires that the whole subject of the litigation be brought forward by the parties, and the judgment concludes all matters, whether of action or defense, legally pertaining to that subject which, by the exercise of reasonable diligence, might have been brought forward.

(continued...)

not only of those matters actually determined in the prior action, but also those that reasonably could have been litigated in the prior action. *Am. Nat'l Bank & Trust v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979); *Brown v. Brown*, 29 S.W.3d 491, 495 (Tenn. Ct. App. 2000). Where all "claims and theories" asserted in the later litigation had accrued and were available for litigation in the prior action, *res judicata* applies. *Am. Nat'l Bank & Trust*, 586 S.W.2d at 827. Thus, the former judgment is conclusive "not only as to matters actually put at issue, but equally to those which by due diligence of the litigant . . . might have been put in issue and determined." *Brown*, 29 S.W.3d at 496 (quoting *Hayes v. Civil Serv. Comm'n. of Metro. Gov't*, 907 S.W.2d 826, 828 (Tenn. Ct. App. 1995)).

We affirm the trial court's denial of the claim for $55,000 and reverse the trial court's entry of judgment on the claim for $40,000.[19] Both claims were unenforceable against the Estate.

## IV. Conclusion

In conclusion, we affirm the trial court's decision upholding the validity of the divorce decree and the award of the annuities to Ms. Williams. We affirm in part and reverse in part the trial court's decision regarding the claim against the Estate and find the entire claim by Ms. Williams is unenforceable. We reverse the trial court's order granting a judgment against Ms. Williams in the amount of $430,395.40 for tax liability and remand the case for any further proceedings which may be necessary. The costs of the appeal are taxed equally to Ms. Williams and Jennie Williams Perdue, Executrix of the Estate of James H. Williams.

_____
PATRICIA J. COTTRELL, JUDGE

---

[18](...continued)
*McKinney v. Widner,* 746 S.W.2d 699, 705 (Tenn. Ct. App. 1987).

[19]Even if this court does not agree with the reason advanced by the trial court to justify its judgment, we are "called upon to pass upon the correctness of the result reached in the trial court, not necessarily the reasoning employed to reach the result." *Shelter Ins. Cos. v. Hann*, 921 S.W.2d 194, 202 (Tenn. Ct. App. 1995).